## KOESTER v. NORTHWESTERN PORT HURON CO.

Under Code Civ. Proc. § 145, providing that new matter not relating to a counterclaim is deemed controverted, no reply to merely defensive allegations in the answer is required, but the same are deemed controverted by the operation of law.

An assue of fraud may arise upon the fact alleged in the answer.

Evidence that an instrument, though signed, was never in fact legally delivered, is not within the rule excluding evidence varying a written instrument, and, if competent to show a nondelivery, it is immaterial that it may also tend to show by parol a contract differing from the written instrument itself.

The fact that a party may have the manual possession of a contract does not show a complete delivery within Civ. Code, § 1240, providing that a contract takes effect upon delivery to the party in whose favor made, and section 1241, providing that the provisions of the chapter on transfers in general, apply to all contracts, and section 924, providing that a grant cannot be delivered to the grantee conditionally, but the question is still open whether the other party intended to place them in the hands of such party beyond the power of recall.

Evidence held to support a finding that both an order for a threshing outfit and the purchase notes and mortgages were placed in the possession of the seller's agent with the distinct agreement that they were not to be sent to the seller for approval and acceptance, until the buyer had received a copy of the contract, and the machinery had been proved to be as warranted.

The jury by its answer to special questions, and the trial court by its findings of fact, having determined an issue in a certain manner, the Supreme Court will not disturb such findings.

Error, if any, in allowing an amendment of the complaint, was not reversible, under Code Civ. Proc. § 153, directing a disregard of error not affecting a substantial right, where the transaction alleged by the complaint was the same as set up by the answer, and the vital issues arose upon the implied denial of the allegations of the answer.

Haney, J., dissenting.

(Opinion filed, Jan. 19, 1910.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by O. H. Koester against the Northwestern Port Huron Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Modified and affirmed.

*Dodge & Tautges* and *Winsor & McNaughten*, for appellant. *Bates & Parliman*, for respondent.

SMITH, J. The plaintiff in the court below, who is the respondent in this court, by his amended complaint alleges that on or about the 12th day of June, 1905, defendant sold to plaintiff a steam threshing outfit, consisting of a separator and steam traction engine, together with various accessories, appendages, and tools belonging to said machinery, for the sum of $3,800, warranted said machinery to be first-class in material, workmanship, and finish, and that it would do its work as well and as successfully as any threshing machine manufactured, and that the defendant promised and agreed to and with this plaintiff that if the said machinery was not, and did not work, as above warranted, the plaintiff should return the same to the defendant at Humbolt, S. D., and that the defendant would then take back said machinery and surrender to plaintiff and cancel the notes and mortgages given by plaintiff to the defendant for said machinery; that plaintiff relied upon the said warranty and agreement, and was

thereby induced to buy said threshing machine and pay for the same; that thereafter, and on the 12th day of June, 1905, relying upon said warranty and agreement, plaintiff paid defendant for said machinery by executing and delivering to said defendant his three promissory notes, in the sum of $3,800, and bearing interest at the rate of 8 per cent. per annum from date until maturity, secured by chattel mortgage on all the property purchased by him as aforesaid, and by his certain mortgage on real estate in said county, then owned by him; that the said machinery did not fulfill nor comply with the conditions of said warranty; that it was not first-class in material, workmanship, and finish; that it did not do its work well nor as satisfactory as any threshing machinery ever manufactured. The plaintiff then sets out certain trials of said threshing machinery, and alleges the particulars in which the same is claimed to be imperfect and the defective manner in which the same operated; that, after said trials of said machinery, the plaintiff notified defendant of the said defects and of its failure to work in accordance with the conditions of said warranty, and that defendant failed to remedy said defects or cause said machinery to work in accordance with the said warranty; that thereafter, on or about August 30, 1905, and after the aforesaid test and failure of said machinery, and after defendant had failed to cause said machinery to work in accordance with said warranty, the defendant instructed plaintiff to return said machinery to defendant at Humbolt, in said county, the place were plaintiff received said machinery from said defendant. The plaintiff did thereupon return all the machinery to the said defendant at Humbolt on the 7th day of September, 1905, and notified defendant thereof. Plaintiff also, at said time, rescinded said contract of purchase, and notified defendant thereof. The plaintiff further alleges that in his attempt to use said machinery he incurred certain expenses for labor, material, and other matters, and spent four weeks' time with his team, and demands judgment that the notes executed and delivered to plaintiff for said machinery be surrendered and canceled, and that the chattel and real estate mortgages executed to secure the same be canceled and discharged of record, and that he have

and recover of the defendant the amount of his necessary expenses in attempting to make the machinery work according to the aforesaid warranty. The plaintiff also prays for such other and further relief as to the court may seem proper.

The defendant in its answer denies each and every allegation in the complaint, except as thereinafter admitted. The defendant admits and alleges that on or about the 19th day of May, 1905, the plaintiff executed his written order to defendant for the identical articles of machinery described in the plaintiff's complaint, which were to be delivered to him only upon the conditions set forth in the said written order, to be mutually performed by the parties thereto at the times and in the manner therein specified; that on the 26th day of May, 1905, defendant accepted said order, and on or about said date delivered said machinery to plaintiff and plaintiff accepted the same, subject to the provisions and terms of said contract and not otherwise. Defendant also admits that the consideration for said machinery was as alleged by the plaintiff, and also admits the execution and delivery of the notes and mortgages above referred to. The answer then sets out the various warranties and conditions contained in the alleged order or contract, among others being that, "if at the end of the first day's use the purchaser is unable to make said machinery operate well, that he shall give immediate notice by registered letter to the defendant company * * * stating particularly, what parts, and wherein the machinery fails to fulfill the said warranty"; that plaintiff commenced to use said machinery and the whole thereof on the 12th day of August, 1905, but did not give the defendant the notice required or any notice of the condition of said machinery until on or about September 8, 1905, and did not at any time point out to the defendant what parts and wherein the machinery failed to fulfill the warranty; that it was further provided in said contract "that if the purchaser is not satisfied with said machine after it is put in order by a skilled workman sent to said machine, in response to aforesaid notice, then in order to obtain the benefit of these warranties, the purchaser shall, within three days thereafter, notify the * * * defendant, at Minneapolis, Minn., by regis-

tered mail that he is not satisfied, and that a competitive trial is required;" that plaintiff at all times failed to comply with said conditions; that it was provided in said contract and order "that, if a competitive trial of this engine is made, the trial is to be made by three mechanical engineers, well known to be disinterested and reliable men. If a competitive trial of the other machinery * * * covered by these warranties is made, the trial is to be judged by three disinterested farmers, etc., the purchaser to select one judge and the company to select another, the two so selected to select the third"; that plaintiff never served upon defendant a notice for a competitive trial and none was ever had, nor did plaintiff ever select a judge to engage therein; that the contract further provides, "All these warranties * * * shall be considered as fully satisfied unless the purchaser promptly gives the registered notice herein required, and it is expressly agreed that six days' retention from the first day's use of said machinery shall be conclusive evidence of the fulfillment of these warranties, * * * and the plaintiff thereafter, should make no further claims on said company and that all implied warranties are expressly waived by purchaser;" that it is further provided therein that, "when approved and accepted, this order is a binding contract. It cannot be waived in any respect, except in writing over the signature of an officer of the company. Agents and salesmen are authorized to take orders only in accordance with special instructions and on the form furnished by the company, subject to approval as aforesaid. Agents, salesmen, and mechanical engineers have no agency power and are without authority to bind the company or release the purchaser by any contract or statement whatever, and it is expressly agreed that no act or statement of theirs shall expressly or impliedly waive the terms of the preceding conditions."

Defendant then alleges that the plaintiff wholly failed to comply with each and all of the conditions to be performed on his part, as set forth, in the time and manner therein required or at all. Defendant further alleges that each and every article of machinery furnished by it under said contract conformed to the representation therein set forth, and if the same failed to do work

as represented therein, such failure was not due to defects in said machinery, but solely to the negligence, carelessness, and unskillfulness of the plaintiff, his agents, and servants. The defendant demands that the prayer of the complaint be denied. Appellant in the third, fourth, and fifth assignments of error contends that the court erred in receiving evidence and making findings of fact on issues not within the pleadings. The facts as found by the court are clearly within the issues presented, by the allegations of the answer and the denial thereof interposed by operation of law.

The answer presents only defensive matter, and no formal reply thereto is required on the part of the plaintiff. The issues thus raised by the pleadings were duly tried upon special questions and answers submitted to a jury by the trial court, and thereafter the court duly made and filed its findings of fact and conclusions of law in accordance with the special findings returned by said jury. The findings of fact made by the court sustained the allegations of defendant's answer as to the terms and conditions of the written contract or order. The remaining findings of fact, which are very voluminous, so far as they are pertinent to the question presented by the assignments of error, are in substance as follows: That plaintiff did not read the contract referred to in the court's findings before signing the same and was induced to sign said contract without reading the same by means of artifice practiced on him by the said F. L. Layton as follows: That at and immediately prior to the time of signing said contract the said F. L. Layton represented and stated to plaintiff that he, Layton, had only a few minutes to catch a train to go to another town, where he had a sale on hand, and that, if he missed such train, he would lose that deal, and asked plaintiff to sign the contract so that it would keep other companies from getting an order from him, and that Layton would thereafter give plaintiff a chance to read the contract before it should take effect or be sent in to the company, and if when plaintiff should read said contract it was not satisfactory that he, Layton, would cancel the same, and give it back to plaintiff, and there would be no sale; that at the same time he stated to

plaintiff that said contract contained provisions warranting said machinery to be first class, made of the best materials, and perfect in construction and workmanship, and would do just as good and more and better work than any other threshing machinery in the market; that the contract warranted the machinery to be of that kind, and that, if it did not fulfill the warranty as represented by Layton, he would return the contract to plaintiff, together with such notes and mortgages as he might execute in payment for said machinery, and would also pay him for his trouble in attempting to operate the same; that about June 12th said Layton notified plaintiff that said machinery had arrived ready to be delivered at Humbolt, and requested plaintiff to execute the notes and mortgages for the purchase price of the same, and, when plaintiff objected and refused to execute said notes and mortgages until he had seen the contract, Layton stated to plaintiff that the contract was as he had theretofore stated and represented it to be, and promised and agreed that he would keep the notes and mortgages at Sioux Falls, in his own possession, and not send them to the defendant company until plaintiff should receive a copy of the contract, and the machinery prove to be as represented and warranted by said Layton, otherwise the written order and the notes and mortgages would be returned to plaintiff; that the plaintiff, relying upon and believing the statements so made by the said Layton, signed and delivered to the said Layton the three promissory notes in question, together with the mortgages securing the same; that, upon request of Layton, and relying upon the statements so made to him, the plaintiff took possession of the threshing machine at the railway station at Humbolt, and thereafter attempted to operate the same; that the said machinery did not fulfill or comply with the conditions of said warranty. The findings of fact set forth in considerable detail the particular respects in which the machinery was found to be defective; also find that the machinery was tried and tested both by the plaintiff and other persons skilled in the use of such machinery, but that the same could not be made to operate properly in accordance with the terms of the warranty. No exception is taken by appellant to this finding, and the facts so found are apparently conceded.

The court further finds: That on August 11, 1905, the plaintiff took said threshing machine from Humboldt to commence threshing and on August 12th attempted to thresh with the same, but found that it would not operate properly, whereupon the plaintiff immediately telephoned the said Layton, agent of defendant, and notified him of such defects and of the unsatisfactory manner in which the machinery worked. That Layton thereupon promised and agreed to bring out an expert on the following Monday, but told plaintiff to go on and use the machine if he could. The plaintiff waited for Layton until Wednesday, August 16th, and, neither Layton or the expert having arrived, plaintiff went to Sioux Falls, saw Layton, and explained to him the defects in the machinery, and told him he was unable to make the machine do good and satisfactory work. Layton promised plaintiff that, as soon as the grain was dry enough to thresh, he would go out with an expert and assist in starting the machine. He did not comply with this promise in any respect until Sunday, August 27th, when he brought out an expert and looked over the threshing outfit, stating to plaintiff that he wanted to try the machine himself and see it work, and would be back the next day, or that he and the expert would both be back and see that the machine was started right, and, if it could not be made to work properly, that plaintiff should haul it back to Humboldt Layton also told plaintiff that the engineer who had been running the engine was incompetent; that he knew a man at Humboldt by the name of Hutchinson, who was competent, and asked plaintiff to employ him. That both Layton and the plaintiff saw Hutchinson, and told him to run the threshing rig, and, if he could not run it, told plaintiff to pull it back to town or leave it there. That Hutchinson took charge of the engine the next morning, tried to remedy the defects and make it work, but was unable to do so, and on the same evening Layton sent out another engineer to take charge of and run the engine. This engineer attempted to remedy the defects and make the same run properly but was unable to do so. On Wednesday, August 30th, Layton again came out, took charge of the threshing machine, and tried to make it work properly, but was unable to do so. Layton

thereupon instructed plaintiff to haul the machine back to Humboldt, the place where he received it, and leave it there. Previous to this, on August 17th, plaintiff had notified defendant company by registered letter that the machine did not work in a satisfactory manner, which letter was received by the defendant at its office in Minneapolis. And again, on August 23, 1905, plaintiff notified the defendant company by registered letter received at its office in Minneapolis on August 24th that said threshing machine did not work and operate properly, and was defective in the particulars specified in the findings set out by the court herein, which letter was received and acknowledged by defendant. That after receiving from plaintiff notices of the defects in said machinery and of the manner in which the same worked and operated defendant sent said Layton and Powell, its agent and expert, to remedy the defects in said machinery, and at all times after plaintiff first notified Layton on August 12th of the defects in said machinery the defendant recognized the defects complained of, and through its said agents co-operated with the plaintiff in attempting to remedy said defects and put the machine in proper working order. That it was found impossible to put said machinery in proper working order so that the same would properly thresh grain and fulfill the terms and conditions of the warranty, and that on the 7th of September, 1905, the plaintiff delivered said machinery to defendant at Humboldt, S. D., as directed by said Layton, and on September 9, 1905, notified the defendant company by registered letter, at its office in the city of Minneapolis, that he had rescinded said contract and delivered said machinery to said company at Humbolt, S. D., where he had received it. Upon these findings, the court finds as a conclusion of law: First. That the contract, Exhibit A, set forth in the finding of fact No. 2, was never made and entered into by plaintiff and defendant, and that the same never became a valid and subsisting contract between them. Second. That the defendant company waived the conditions contained in Exhibit A in regard to the purchaser giving notice to defendant by registered letter of the defects in said threshing machinery, and also waived the conditions contained in Exhibit A in regard to a competitive

test. Third. That plaintiff is entitled to judgment against the defendant. In its fifth, sixth, and seventh assignments of error appellant contends that the court erred for the reason that said findings are not within the issues raised by the pleadings. We believe appellant is in error in this contention. No reply to the defensive allegations of the answer is required, but the same are deemed controverted. Code Civ. Proc. § 145. Issues as to the allegations of the answer arise upon the service thereof. Wyman v. Werner, 14 S. D. 300, 85 N. W. 584. An issue of fraud may arise upon the facts alleged in the answer. Lyon v. Plankinto Bank, 15 S. D. 400, 89 N. W. 1017. The issues thus arising upon the allegations of the answer were. First. Was there ever a legal binding delivery of the contract of the defendant after the same had been signed by the plaintiff? Second. Were the acts and conduct of the defendant of such character as to operate as a waiver of the terms and conditions of the contract relating to notice of defects, and providing for a competitive test as specified in the contract? These issues of fact were tried and found adversely to the defendant. It is perfectly clear, therefore, that the findings of fact referred to were within the issues arising under the pleadings, and defendant's contention cannot be sustained.

Appellant, however, further contends, first, that the evidence offered by the plaintiff to sustain the issues thus raised upon the answer was incompetent, for the reason that it sought to vary the terms and conditions of a written instrument; and, second, that such evidence, if competent, was insufficient to sustain the findings of the court as to the facts relating to the delivery to Layton of the written order or contract. A sufficient answer to the first contention is that this evidence, while it may appear to vary the terms of the contract, was entirely competent in its bearing upon the question of delivery of the instrument to the agent, Layton, after it had been signed by the plaintiff. Evidence offered for the purpose of showing that the instrument, although signed by plaintiff, was never in fact legally delivered to the defendant, is not deemed to be within the rule excluding evidence which seeks to vary the terms and conditions of a written instrument, and, if competent for the purpose of showing a

nondelivery of the written contract, it is immaterial that it may tend to show by parol a contract differing in its terms and conditions from those of the written instrument itself. In 17 Cyc. p. 694, the rule is laid down as follows: "Evidence which is offered not for the purpose of varying or contradicting the terms of a written instrument, but to show that it was never intended to become operative between the parties and never in fact had, any legal existence as a contract or grant, is admissible." In the case of Atwood v. Gillett, 2 Doug. (Mich.) 219, the court says: "The defendants insist that the testimony of Ives, if believed, proved conclusively that the certificate never was delivered to the plaintiff—that is, in a technical legal sense—that it was in fact placed in his hands for the sole purpose heretofore mentioned and never, was designed by Gillett to become operative as a contract, and that the plaintiff well knew such to be Gillett's understanding of the transaction, and professedly acted upon that understanding himself in obtaining possession of the instrument. Was such proof competent? * * * In the case at bar the effect of testimony submitted to the jury and subsequently withdrawn was not to contradict or in any respect to vary or explain the terms of the instrument, but to show that it never was designed to be an operative contract to any extent or purpose whatever; that it was not made or delivered by Gillett with that view, and was not so received by Atwood. Was not the evidence admissible for that purpose? Did it not show that the certificate had no legal existence as a contract, that it had no binding force? If it be said that parol proof contradicted the writing, it may be replied just so would proof that it never was delivered at all, or that it was obtained by fraud or delivered as an escrow, and yet no one doubts the admissibility of proof of those facts."

In the case of Burke v. Dulaney, 153 U. S. 238, 14 Sup. Ct. 819, the court says: "For the reasons stated, and without considering the case in other respects, we are of the opinion that it was error to exclude the evidence given by defendant tending to show that the writing sued on was not delivered to or received by Dulaney as a promissory note of the defendant, binding upon him as a present obligation enforceable according to its terms,

but was delivered to become an obligation of that character when but not before, the defendant examined and, by working them, tested the mining properties purchased by the plaintiff, and elected to take the stipulated interest in them." See, also, Southern Adv. Co. v. Metropole, 91 Md. 61, 46 A. T. L. 513; Brewster v. Keel, 74 Iowa, 506, 38 N. W. 318; Lamar M. & E. Co. v. Craddock, 5 Colo. App. 203, 37 Pac. 950; Wendlinger v. Smith, 75 Va. 309; Biederman v. O'Connor, 117 Ill. 493, 7 N. E. 463; Benton v. Martin, 52 N. Y. 572; Harnickell v. N. Y. Life Ins. Co., 111 N. Y. 398, 18 N. E. 632, 2 L. R. A. 150; Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127. In this connection it may be proper to note that we have not overlooked certain sections of our Civil Code relating to the delivery of contracts:

"Sec. 1240. A contract in writing takes effect upon delivery to the party in whose favor it is made, or to his agent.

"Sec. 1241. The provisions of the chapter on transfers in general, concerning the delivery of grants, absolute and conditional, apply to all contracts."

"Sec. 924. A grant cannot be delivered to the grantee conditionally. Delivery to him or his agent as such, is necessarily absolute; and the instrument takes effect thereupon discharged of any conditions on which the delivery is made." The Civil Code of California contains sections identical with those above quoted. Civ. Code Cal. §§ 1627, 1054, 1056. The Supreme Court of that state in construing these sections, in the case of Kenney v. Parks, 125 Cal. 146, 57 Pac. 772, says: "Was the delivery of the husband's deed to the cashier sufficient to pass the title to the wife? Upon mature consideration, we have arrived at the conclusion that no title whatever passed. While it is not so expressed in the agreement, yet the intention of both parties is plain that the party surviving should have his or her deed returned in case the other party should die and that no title to the property described in the deed of the party living should vest. In other words, the plaintiff having survived her husband, her deed is to be returned to her, and title to her property remain vested in her. * * * The general principles of law involved in this case are quite fully discussed in Bury v. Young, 98 Cal. 446, 33

Pac. 338. In the decision of that case many authorities are
cited supporting the conclusions declared, and with that con-
clusion we are entirely satisfied. It is there said: 'The essential
requisite to the validity of a deed transferred under circumstances
as indicated in this case is that, when it is placed in the hands of
a third party, it has passed beyond the control of the grantor for
all time.' In the present case by the agreement of the grantor
and grantee it was understood that the grantor's deed was to be
returned to him upon the happening of a certain event, to wit, the
death of the other party. And at this time it may be assumed
that the plaintiff's deed has been returned to her, or at least has
been treated as of no force and effect. In the Bury Case it is
also said: 'In every case where the deed has been declared
invalid by reason of failure of delivery it will be found the
grantor reserved some rights over the instrument; that upon the
happening of some event or contingency or condition he had the
right, if so disposed, to reach out and take it from the possession
of the depositary.' The present case comes squarely within that
description. Here the grantor reserved the right to recall his
deed upon the happening of a certain event. When that event
happened, he had the right to reach out and take back the deed,
and such reservation is fatal to a valid delivery." In the fore-
going case the deeds were deposited with a third party. But in
the case of Kenney v. Parks, 137 Cal. 530, 70 Pac. 557, this
case was under review by that court, and the court there says:
"Mistake and fraud are indeed alleged and found, but the plain-
tiff's cause of action is complete without regard to either of
these facts; for, eliminating these elements from the case en-
tirely, there still remains the fact that the deeds were placed in
the possession of her husband upon the understanding that they
were to have effect only upon the contingency of her death
before that of her husband. It follows that there was no delivery,
or that the deed took effect subject to a trust in favor of the
plaintiff for a reconveyance on the failure of the condition.
* * * On this point also we are clear the appellant's con-
tention must be sustained. To constitute delivery of a deed, it is
not sufficient that there be a mere delivery of its possession, but

this act must be accompanied with the intent that the deed shall become operative as such. 2 Boone on Real Property, §·295a, Black v. Sharkey, 104 Cal. 281, 37 Pac. 939; Denis v. Velati, 96·Cal. 227, 31 Pac. 1; Harris v. Harris, 59 Cal. 622. Here both parties understood that the deed could have no effect until recorded, and there was therefore no intent that it should become immediately operative, or that it should ever become operative, during the life of the grantor, or afterwards, unless the grantee should survive her. The case, therefore, comes within the principle of decision in the former case of Kenney v. Parks, 125 Cal. 146, 57 Pac. 772, where the parties were the same as here, and the same general transaction was involved. It was there held there was no delivery of the deed of Kenney to his wife; the ground of the decision being that, though not expressed, 'the intention of both parties is plain that the party surviving should have his or her deed returned in case the other party should die.' The only difference between the cases is that in the former case the deeds were deposited with a third party, and in this case with the grantee. But this does not affect the application of the principle. We do not deem it necessary to discuss here the decisions in which it has been held that the delivery of a deed to the grantee to take effect upon the death of the grantor is an effective delivery or the construction of the much misunderstood rule laid down in section 1056 of the Civil Code. · To justify the application of the rule, there must at least be a delivery of the deed, which implies the intent that it shall become at once operative, either absolutely or conditionally. Wheelright v. Wheelright, 2 Mass. 447; Black v. Sharkey, 104 Cal. 279, 37 Pac. 939; Dennis v. Velati, 96 Cal. 223, 31 Pac. 1. But such is not the case here, where the understanding, and therefore the intent, that it should or could take effect presently, was lacking. · Nor do we deem it necessary to refer to the doctrine of escrow and to the ancient rule that delivery of a deed to the grantee as an escrow is to be taken as an absolute delivery further. than to say that these doctrines, and especially the latter, have often been misunderstood and misapplied." It seems plain, therefore, that the fact

that the defendant or its agent may have acquired the manual possession of these written instruments does not constitute a complete and binding delivery within the sections above quoted, but that the question was still open to inquiry as to whether plaintiff intended to place them in the hands of Layton beyond the power of recall. That such was not his intent is in effect the finding of the trial court, and the evidence and the whole surrounding circumstances are amply sufficient to sustain this conclusion.

Appellant's second contention, that the evidence is insufficient to sustain the findings of the trial court, as to the contingent delivery to Layton of the contract order, and of the notes and mortgages, cannot be sustained. The testimony of the plaintiff as to what occurred at the time the order and the notes and mortgages were placed in possession of Layton is in direct conflict with that of Layton and Murphy, the agents of defendant. The evidence of plaintiff is to the effect that both the order for the machinery and the notes and mortgages were executed by the plaintiff and placed in Layton's possession w'th the distinct agreement that the same were not to be sent to the defendant for approval and acceptance until the plaintiff had received a copy of the contract, and the threshing machinery had been proved to be as represented and warranted by Layton. For the purposes of this case, it is immaterial whether the contract or order was in the form claimed by plaintiff or in that alleged by defendant. The conditions named precluded the taking effect of any contract so as to become binding until these conditions had been complied with. Nor is it material whether Layton, the agent of defendant, was guilty of fraud in making such agreement with plaintiff and violating it by forwarding the order to the company. In any view of that transaction, it was an act which could not make such wrongful delivery to the company binding upon this plaintiff. The circumstances detailed by the plaintiff as to Layton's agreement to retain these papers in his own possession were denied by both Layton and Murphy, defendant's agents, thus presenting to the jury and the court the issue of credibility; and both the jury by its answer to the special questions submitted, and the trial court by its findings of fact.

having determined that issue in favor of the plaintiff and against the defendant, this court will not disturb such findings. Nor is it material for the purposes of this question of the intention of the parties as to a delivery whether the warranties in the contract were as alleged by plaintiff, or as claimed by defendant. The negotiations and agreements preceding the signing of the papers, and evidencing the intention in leaving them in Layton s hands, were oral, and wholly independent of the warranties contained in the written contract itself. The questions whether the contract was read by plaintiff or whether he was guilty of negli· gence in failing to read it before siging became likewise immaterial, because, as found by the court, there never was a valid or binding delivery of the contract to the defendant.

At the close of all the evidence, the plaintiff asked, and was granted, leave to amend his complaint to conform to the facts proved. To the application for this amendment the defendant objected, and, upon same being granted, duly entered his exception thereto, and he now assigns error in said ruling. Appellant contends that the amended complaint is totally unsupported by any evidence, and presents a case wholly different from that found by the court. If it were conceded to be error to permit such an amendment, it is difficult to imagine in what way the defendant was injured or prejudiced thereby. The transaction alleged by the plaintiff was the same transaction set up by defendant's answer, and the vital issues arose upon the implied denial of allegation contained in the answer. The parties had but one deal touching this same machinery, and the form of the purported contract was either oral, as alleged by the plaintiff, or written, as alleged by the defendant. That there was a transaction, and only one, out of which this controversy arises, is alleged and admitted by both parties. The actual terms and conditions of these transactions were in dispute, but were fully ascertained and determined by the trial court under the evidence presented; and how the defendant could complain after the court had found with him as to the contents of this undelivered contract or order is not apparent. Section 153, Civ. Code Proc.,

provides: "The court shall in every stage of action, disregard. error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." W. Twine Co. v. Wright, 11 S. D. 521, 78 N. W. 942, 44 L. R. A. 438; Kinkade v. Howard, 18 S. D. 60, 99 N. W. 91.

This brings us to a brief consideration of the relief to which the plaintiff is entitled in this action. The primary object of the action was to obtain a cancellation or return of the various instruments or writings signed by the plaintitff, and now in defendant's possession. In connection with this relief, and, as he conceived, incidental to it, the plaintiff asks to recover damages for freight paid by him on the threshing outfit, together with expenditures of time and money in attempting to use the machinery for the purposes for which he purchased it. It is plain that a recovery of damages of this character could be had only under a contract of warranty. We are not called upon at this time to determine the status of the property which was delivered to the plaintiff in the course of the transactions here involved, nor the rights of the parties relative thereto. It is sufficient for the purposes of this case to hold, as we do, that there never was a delivery of the written instrument referred to, and that plaintiff is therefore entitled to a return and cancellation of the same. But in this action there can be no recovery of damages of the kind claimed for the reason that no contract of warranty of any description is shown to have existed, and it is not essential to the primary relief sought in this action that any warranty or breach thereof should appear. It is therefore ordered that the judgment of the trial court be modified by striking out the damages, and, as so modified, the judgment and order of the trial court are affirmed.

HANEY, J. (dissenting). With all due respect to my associates, this seems to me to be a case governed by the provisions of the statute relating to the delivery of a written contract to the party in whose favor it is made or to his agent; that in the absence of fraud such delivery should be regarded as absolute; and that the court erred in receiving evidence to prove a conditional delivery.