117   493
26a 351

HENRY A. BIEDERMAN

*v.*

MICHAEL O'CONNER.

*Filed at Ottawa March 27, 1886.*

1. ARREST OF JUDGMENT—*on ground of immaterial issues.* Judgment will not be arrested, on motion of the plaintiff, on the ground that certain special pleas present immaterial issues, if the general issue has also been filed, and the finding of the jury is general, in favor of the defendant.

2. EVIDENCE—*as to delivery of contract—presumption—evidence in rebuttal.* The possession of a contract or written obligation by the vendee or obligee therein named, affords presumptive evidence of its delivery to him, but it is not conclusive; and evidence tending to prove fraud in obtaining the possession of the writing, or to show that it was not in fact delivered, is always admissible.

3. CONTRACT—*want of delivery—fraudulent possession.* A party signed a contract for the sale of a quantity of corn at a stated price, to be delivered

in the future, upon the understanding that he was to have $1000 paid down. The purchaser took possession of the contract without paying anything, the maker objecting and protesting, and it was finally agreed between them that if the $1000 was paid by eight o'clock of the next morning, the contract was to hold good, otherwise not. In the morning no money was produced, but a check was tendered, and refused, the drawer not having funds in bank to meet it: *Held,* that the contract never became binding, for want of delivery, and that the possession of the same was fraudulent.

4. PLEADING AND EVIDENCE—*proof under the general issue.* Under the general issue in an action *ex contractu,* the defendant may give in evidence anything which tends to show that the plaintiff never had any cause of action. So he may show that the instrument sued on never became a valid contract for want of delivery, or on account of non-performance of a condition precedent to its taking effect; and such evidence does not vary or change the terms of a written contract.

5. CONSIDERATION—*extension of time for payment.* Where a contract is made for the sale of corn upon condition that a given sum is paid down in advance, and the purchaser, not having the money, is given until the next morning to get the same, no new consideration is necessary to the extension of the time of performance.

6. INFANCY—*infant can not avoid contract in part.* If an infant agrees to pay a certain sum in advance as a consideration for the execution and delivery of a contract for the sale and delivery of corn, he will not be permitted to shield himself from performance on his part, and hold the vendor to do that which he was to do only upon the condition of the infant performing his part.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLOUGHBY & DOUGHERTY, for the plaintiff in error:

A party selling corn for future delivery may annex such conditions as he pleases, but if the contract is reduced to writing and delivered, they can be shown only by the writing, which can not be enlarged or diminished by parol evidence as to the agreement of the parties. Bishop on Contracts, sec. 58.

All antecedent verbal propositions and discussions are, so far as agreed upon by the parties, incorporated into the writ-

ten contract,—all else is intentionally excluded. Verbal evidence can not be heard to contradict or vary the terms of the written agreement. The rules apply with equal force to written propositions for a contract. *Adair* v. *Adair*, 5 Mich. 210 ; *Pickrel* v. *Rose*, 87 Ill. 263 ; *Martin* v. *Hamlin*, 18 Mich. 354 ; *Beers* v. *Beers*, 22 id. 43 ; *Ward* v. *Lewis*, 4 Pick. 518 ; *Weaver* v. *Fries*, 85 Ill. 356 ; *Snider* v. *Griswold*, 37 id. 216.

The contract can not rest partly in parol and partly in writing. *Marshall* v. *Gridley*, 46 Ill. 247 ; *Purrington* v. *Railroad Co.* id. 297.

There was no consideration for the plaintiff's promise to bring $1000 by eight o'clock next morning. The contract was before that consummated. If plaintiff did agree to bring the $1000 next morning, it was a mere gratuity. Then, again, he was a minor, and if it had a consideration, he had a right to plead his infancy to it, which was done.

Defendant's fourth and fifth instructions are erroneous. The parties have a right to vary a written contract by a subsequent parol agreement, but there must be a consideration for the contract so made, for it becomes a new contract. The same is true of the ninth and other of defendant's instructions. If a paper is delivered as an *escrow*, it is a queer thing to place it in the hands of the opposite party. *Dawson* v. *Hall*, 2 Mich. 390.

Many of defendant's instructions are bad, as having no evidence upon which to be based.

When a case is tried upon immaterial issues tendered by pleas, and a verdict is given for the defendant upon such issues, the court, on motion, should arrest judgment, and enter judgment for the plaintiff *non obstante verdicto*.

Messrs. McKENZIE & CALKINS, for the defendant in error:

The court could not usurp the province of the jury, and render a judgment for the plaintiff. If it should, for how much? Besides, the general issue was not an immaterial one.

A contract delivered conditionally to either party, or his agent, only to take effect on a certain specified event, does not take effect unless such event transpires. *Railroad Co. v. Hall*, 1 Bradw. 612.

Even if several erroneous instructions were given, yet if the court can see that substantial justice has been done, the judgment will be affirmed. *Conklin* v. *Burdick*, 6 Bradw. 153; *Stallings* v. *Board of Trustees*, id. 165; *Hubner* v. *Feige*, 90 Ill. 208; *Race* v. *Oldridge*, id. 250.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a suit brought in the Knox circuit court, by plaintiff in error, against defendant in error, to recover damages for his failure to deliver 10,000 bushels of corn according to the terms of the following contract in writing:

"GALESBURG, ILL., *June 5, 1882.*

"Mr. M. O'Conner promises to deliver Mr. H. A. Biederman 10,000 bushels of good corn, this fall of 1882, at twenty cents per bushel. M. O'CONNER."

The defendant filed the general issue and several special pleas, upon all of which issue was taken. A trial resulted in a verdict for defendant. Motions for new trial and in arrest were severally overruled, and judgment rendered on the verdict, and against the plaintiff, for costs. The case was taken, by appeal, to the Appellate Court for the Second District, where the judgment of the circuit court was affirmed, and the present writ of error is prosecuted to that court by the plaintiff below.

Very many of the errors assigned have been eliminated from the case by the judgment of the Appellate Court.

The plaintiff in error insists that each of the special pleas presented an immaterial issue, and that for that reason the judgment should have been arrested. Without pausing to discuss the correctness of the practice indicated, it will be

sufficient to say that the general issue filed presented a material issue, and therefore no such practice would have been warranted.

It is also insisted that the court erred in admitting in evidence, over the objection of plaintiff, conversations preliminary to, and contemporaneous with, the signing of the instrument sued on, and many authorities are cited to sustain the position that all such contemporaneous matters are merged in the writing, and are not admissible to vary its terms. These authorities undoubtedly state the law correctly; but have no application to this case, for the reason that the evidence offered and admitted was admitted for no such purpose, and produced no such effect.

Authorities are also cited sustaining the position that no agreement made at the time of the delivery of a contract in writing, in respect to its delivery, repugnant to the legal effect of the instrument, or for its re-delivery upon conditions, is competent to be proved by parol, and therefore it is insisted the court erred in admitting the attending conversations and circumstances at the time of the signing of said writing. We have no disposition to depart from the rule laid down in these cases, but it will be found in each of the cases cited, there was a delivery in fact of the instrument in writing, or the maker had so acted in respect to the instrument that the rights of third persons would be prejudiced if he was permitted to insist upon its non-delivery, and was therefore estopped from insisting thereon. Mere possession by the vendee or obligee will raise the presumption of delivery, but it has never been held to be conclusive, and it is the well settled doctrine that evidence tending to prove fraud in obtaining possession of the writing, or to show that it was not in fact delivered, is always admissible. Under the general issue, the defendant might introduce in evidence any matters tending to show that plaintiff never had cause of action. 1 Chitty's Pl. 478.

Delivery of the writing being essential to its validity as a contract, evidence tending to establish its non-delivery would be competent under that issue. In this view it will be unnecessary, in considering the relevancy or competency of the evidence objected to, to consider the issues raised by the special pleas. The evidence objected to is that of the defendant and his daughter, who, with the plaintiff, were the only persons present at the time of the alleged making and delivery of the contract. This evidence was, in substance, that in the evening of the 5th day of June, 1882, plaintiff had called at defendant's house, and while there, the defendant came in, and in general conversation plaintiff expressed the opinion that the unfavorable weather would cut short the corn crop, and corn, in consequence, would command a high price. The defendant replied that there was a good stand of corn, and there would be plenty of it,—that he would not be afraid to contract a man all he wanted at twenty cents a bushel. The plaintiff said, "I would like to take 10,000 bushels at that price," and proposed drawing a contract,—to which defendant replied, "If you will pay me $1000, cash down, you may draw up a contract." Plaintiff said he would do it, and immediately drew the writing sued on. The defendant reached over and signed it, and said to plaintiff, "Now, where is your $1000?" The plaintiff replied that he did not have "any thousand dollars," but said, "Mike, I can give you my check, but I haven't any money in the bank," or, "haven't that much in the bank." The defendant immediately said, "I don't want your check,—I want the money." The plaintiff thereupon, instead of producing the money, picked up the writing and put it in his pocket. The defendant protested, and said, "I didn't sign that to have you snatch it up and take it off in that way." The plaintiff kept the writing, and it was finally agreed that if he brought the $1000 in money by eight o'clock the next morning, it was to be a contract, otherwise not. The next morning the plaintiff came

to defendant's house, and again tendered a check, which was refused by defendant, who demanded the destruction of the writing.

It is evident that the defendant did not, at any time, consent to the plaintiff's taking the writing, but at all times insisted upon the payment of the $1000 as a condition precedent to the contract taking effect. This he would have a right to do, and without his assent to the delivery of the contract it could not become binding or effective, and the possession thereof, if taken as shown by this evidence, was fraudulent. It will require the citation of no authority to maintain the position that this evidence was admissible as tending to show that the writing was not in fact delivered. Indeed, there is much in the record to sustain the view that there was no intention, on the part of either plaintiff or defendant, to make a binding contract. The conversation started in badinage. When the defendant was about to sign the contract, the evidence shows that the daughter advised her father not to sign it, and when pressed by plaintiff's counsel for her reason for so doing, testified that she did so because she was afraid Henry (the plaintiff) might have $1000. The plaintiff's visit was a mere friendly call, with no intention of buying corn, yet he agrees to pay $1000 down when he knows he has not got it; offers his check on a bank where he has no funds, and finally consents it shall be "no contract" unless he is there with the sum of $1000, in money, by eight o'clock the next morning,—fully an hour, as his counsel admit, before any bank in the city would be open. It is true that some of this evidence is disputed by plaintiff, but he is wholly uncorroborated, whilst the defendant and his daughter substantially agree. No further attention seems to have been paid to this alleged contract, by either party, after the morning of the 6th of June, until the latter part of November, when plaintiff wrote a letter to defendant demanding the corn, and designating a place of delivery. It is not pre-

tended that a tender was ever made of the $1000, or any other sum, by plaintiff, until between the 6th and 10th of December, when the plaintiff claims to have tendered the defendant $1000 in gold. But here, again, he is contradicted by the defendant, who says no tender was made, but that the plaintiff had a bag, in which he said he had $1000, and said to defendant, "I want to show you I could make you a tender." The defendant is corroborated by the witness Inness, who is shown to have been present at time of the alleged tender.

The finding of the jury being with the decided weight of the evidence, and every important question involved arising under the general issue, it will not be important in this case, nor profitable in any other, to take up and discuss in detail the objections to the various instructions given for defendant, or the modification or refusal of those asked by the plaintiff. Special pleas presenting almost every conceivable issue, material and immaterial, were filed, and issue taken on them, and at the trial each party asked instructions upon the theories raised by these pleas. We have carefully considered the whole series, and, while many are objectionable, we find no error for which the cause should be reversed. A number of instructions are given for each party, laying down the rule of law as to wagering contracts, which, if correct in other respects, should have been refused, because there is no evidence on which to base them,—and the same can be said of others of the series. Upon the question presented, and material to the determination of the case,—that is, whether a contract was made by the parties, and if so, whether the plaintiff had complied on his part,—the law went to the jury correctly.

It is urged that if the agreement was that the $1000 was to be paid by eight o'clock the next morning, there are two reasons why the defendant could not set that up: First, that such agreement on the part of the plaintiff was without consideration, and therefore void. This is untenable. The con-

tract was to pay $1000 down. This, plaintiff was unable to do, and being unable, the right to pay it the next morning was a simple extension of time to him in which to make the payment. It might as well be said there was no consideration for the promise to pay, in the first instance. Second, it is said that the plaintiff was a minor, and therefore not bound by his promise, and that infancy was properly replied. This position can not be maintained. He had agreed to pay $1000 as consideration for the execution and delivery of the contract by defendant. He can not be permitted to shield himself from performance, on his part, and hold the defendant to do that which he was to do only upon the plaintiff's performing on his part. Not a dollar had been paid. No right of the plaintiff was in jeopardy. The agreement was to become binding upon the infant's paying the money, and not until then, and he can not relieve himself from performing, and insist upon the validity of the contract.

Upon the whole case, we think the judgment clearly right, and that substantial justice has been done, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*