## Mark F. Madden and Michael S. Madden, Plaintiffs in Error, v. Charles A. Brown, Defendant in Error.

## Gen. No. 16,309.

1. BROKERS AND FACTORS—*when real estate commissions cannot be recovered.* If the broker or his agent make material misrepresentations as to matters connected with their undertaking they cannot recover.

2. BROKERS AND FACTORS—*when real estate commissions cannot be recovered.* If the purchaser produced is not in a position to perform, the agent cannot recover commissions with respect to a transaction not consummated.

Error to the Municipal Court of Chicago; the HON. HOSEA W. WELLS. Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed April 11, 1912.

ROGERS & MAHONEY, for plaintiffs in error.

PINES & NEWMANN, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This was an action brought by Madden Brothers, real estate brokers, hereinafter referred to as plaintiffs, against Charles A. Brown, hereinafter referred to as defendant, to recover the sum of $750, claimed to be due plaintiffs for commissions. After a trial without a jury, the court found the issues for the defendant, and entered judgment on the finding against plaintiff for costs.

The facts of the case are substantially as follows: In August, 1907, plaintiffs inserted an advertisement in a Chicago newspaper that they had certain downtown property for sale. Defendant, owning certain Evanston property which he wished to exchange for other property, noticed said advertisement and telephoned plaintiffs, and they sent a representative, named Whalen, to call on defendant. Whalen, acting for plaintiffs, submitted several pieces of property which were not acceptable to defendant, and, finally, in September, 1907, presented a leasehold at No. 175 Monroe street, Chicago, which he said was owned by Edwin S. Mason, at the price of $60,000, proposing that defendant should sell his Evanston property at $30,000 to Mason, pay Mason $5,000 cash, and give notes for $25,000 at 5½ per cent. per annum, secured by mortgage on said leasehold, thus making said $60,000 for said leasehold. To persuade defendant to make the trade, Whalen gave to defendant a memorandum of the probable income of the building from rents, estimating it at $18,000, and figuring the expenses of maintaining the leasehold and building (such as ground rent, interest on mortgage, taxes, insurance, fuel, etc.), at such a figure as showed a net income of over $6,000 per an-

num. In that memorandum the annual taxes on the property were stated as being $1,400. During the negotiations, Whalen asked defendant if he would pay 2½ per cent. commission on the price of $30,000, put upon defendant's property, or $750, *if a deal should be made,* to which defendant assented. Whalen testified on this point: "I said to him (defendant), if you make the deal, you will pay the regular 2½ per cent., and he said 'certainly.'" Defendant testified: "I told him (Whalen), that it must be understood that no commission would be paid unless the deal went through, and he said, 'Of course, that is understood.'"

On September 26, 1907, defendant wrote a letter to plaintiffs in which he made an offer for said Monroe street property, substantially as follows: That he would give $5,000 in cash, and his said Evanston property, "for the leasehold *as it has been set forth by you,* subject only to $25,000 mortgage, * * * and subject to a lease for 20 years to a responsible tenant, * * * at the rate of $14,500 per year with payments satisfactorily secured." This proposition was not accepted for the reason that plaintiffs, after much effort, were unable to obtain the required tenant for the building.

Subsequently, in January, 1908, Whalen called at the office of defendant, and resumed negotiations. Whalen represented plaintiffs at this time, and Mason testified that plaintiffs had full authority, as agents for Mason, to "make the deal" which Whalen proposed to defendant. Whalen offered the leasehold at $52,500, and told defendant that "we" could take his Evanston property at $37,500, the difference of $15,000 to be paid by defendant—$5,000 in cash and $10,000 by a mortgage on the leasehold bearing 3 per cent. interest per annum. Defendant testified that Whalen, in urging the advantages of this new proposition, told him that the income from the leasehold would be greater than he had thought before, that the interest charge would be reduced from $1,375 to $300 per annum, that the

annual taxes were $1,400, and that, even if the income from the tenants of the building did not reach $18,000, it would still give a large percentage of $100,000, as the value of the leasehold.

Shortly after the interview the defendant met Whalen by appointment, and for the first time went through and examined the building. Mason and one of the plaintiffs also accompanied defendant on this trip through the building. The first floor of the building appeared to be vacant, and Whalen stated in Mason's presence that the rent for said floor (amounting to $5,000 per year) was being paid by a guarantor on the lease. There were no tenants whatever in the building. Returning from the building with Whalen, the subject of commissions was again referred to, and it was agreed between defendant and Whalen that it should be *as previously agreed.* It was also agreed that a contract be drafted, which was personally done by Whalen, dated January 15, 1908, and left by Whalen at defendant's office. A few days afterwards, Mason called and signed the document, and at the same time one Novander, in whose name the Evanston property of defendant was held, also signed it at defendant's direction and in his presence, and delivered it to defendant, but defendant did not surrender possession of it, nor did he at any time thereafter deliver it to plaintiffs. This document provided, among other things, that Mason agreed to assign said leasehold to defendant at the price above mentioned, subject to an encumbrance of $10,000, that defendant agreed to convey his Evanston property and pay $5,000 in cash to Mason, that in case material defects be found in the title, and reported within the time specified, if such defects be not cured within 60 days, the contract, at the option of the party delivering the objections, might become null and void, that "all deeds shall be passed and this negotiation closed at the office of Madden Bros. within five days after the titles have been found good," that "this

contract shall be held by Madden Bros. for the mutual benefit of the parties," and that "brokerage fees or commissions shall be paid to Madden Bros. as follows, Edwin S. Mason $1,250, Leonard W. Novander $750, * * * *as heretofore agreed by them.*"

At the time this document was signed (defendant retaining possession of it), defendant, as he testifies, told Mason that he "would look into the matter further and turn the contract over to Madden Brothers, if I found everything to be satisfactory and as represented." Mason and defendant then separated, and defendant went over to the office of a friend to investigate if everything was as represented, and to ascertain particularly "what the taxes were," what the title was, about the lease, if the rent was being paid for the first floor on the guaranteed lease, and, in fact, "all the points that had been represented to me about the property." Upon making this investigation defendant found that the annual taxes were $2,205, instead of $1,400, as represented by Whalen, and defendant, at this time, made no further inquiry as to the other matters he desired information upon, but decided, on account of the $800 difference in the taxes, to go no further with the deal, and he immediately notified Mason, by letter, that on account of said difference in the taxes, he would not continue negotiations and that the whole matter was off. A day or two afterwards Whalen called on defendant at the latter's office, and urged defendant to continue negotiations, but defendant refused, telling Whalen that he had misrepresented the amount of the taxes, and that in view of the added burden upon the property, which would never diminish, defendant would have nothing further to do with the matter. According to defendant's testimony, and that of an employe of defendant who was present at the conversation, Whalen admitted that he had misrepresented the amount of the taxes. Whalen denies making any such admission. Later Mason called on de-

fendant also urging a renewal of negotiations, at a lower price for the leasehold, but defendant again refused. There was also evidence introduced at the trial tending to show that the guarantor on the lease of the ground floor of the building had either failed or discontinued business, and that Mason, during these negotiations, was not receiving any rent for said floor and had not since May, 1907, that defendant had never been tendered any abstract of title of the leasehold, and that no examination had been made to ascertain if there were any material defects therein, and the record does not clearly disclose that the title thereto was clear and unencumbered, outside of said mortgage of $10,000.

After a careful examination of the record, we are of the opinion that the finding and judgment of the trial court should not be disturbed, because (1) the evidence tends to show that plaintiffs were not entitled to any commissions unless the transaction was consummated, and it was not consummated, (2) because the evidence also tends to show that the signed contract was never delivered by defendant to plaintiffs, (3) because the evidence also tends to show that material misrepresentations as to the leasehold, particularly as to the annual taxes thereon, were made by plaintiffs' agent to defendant, which, upon defendant's being advised of the true situation, justified defendant in refusing to consummate the transaction, and (4) because the record does not affirmatively disclose that Mason was able to give defendant an unencumbered title to said leasehold, subject only to said mortgage of $10,000. Parmly v. Head, 33 Ill. App. 134; Biederman v. O'Connor, 117 Ill. 493; Lawrence v. Rhodes, 188 Ill. 96, 100; Leahy v. Hair, 33 Ill. App. 461; Howe v. Hutchinson, 105 Ill. 501, 504.

The judgment must be affirmed.

*Judgment affirmed.*