**R. G. Sinclair, Appellant, v. Evan B. Sinclair, Appellee.**

**Gen. No. 6,986.**

1. APPEAL AND ERROR—*appeal as precluding writ of error by appellant.* An appeal operates as a continuance of the same case, and when a case is transferred to an appellate tribunal by appeal, there is no case pending in the trial court upon which a writ of error will operate at the suit of the party prosecuting the appeal until the case gets back into the trial court in some regular way.

2. APPEAL AND ERROR—*when second appeal cannot be taken.* A

second appeal cannot be taken when the first appeal has not been dismissed.

3. APPEAL AND ERROR—*appeal as precluding writ of error by appellant.* When an appeal is pending, the case cannot be taken up by appellant by writ of error.

4. CERTIORARI—*appeal as precluding certiorari by appellant.* When an appeal is pending, the case cannot be taken up by the appellant by certiorari.

5. LANDLORD AND TENANT—*essentials to validity of lease.* Before there can be a valid lease, the parties must have the power and authority to execute it and it must, in fact, be executed and be delivered and accepted by the parties before it will be valid and binding.

6. PARTNERSHIP—*when premises occupied by partnership are held under written lease.* Where two partners agreed that one should erect a building and lease it to the firm and, upon the insistence of the other that a written lease be executed, the partner owning the building prepared a lease, signed his own name and the firm name thereto and gave a copy to his partner but it was never signed by the latter though he made no objection thereto, it became a valid and binding contract between them and the premises were thereafter held under it and not under an oral lease.

7. PARTNERSHIP—*sufficiency of evidence to overcome presumption arising from execution and delivery of lease.* While under certain circumstances parties may testify as to their intention concerning the execution and delivery of an instrument, testimony of a partner who executed a lease to the partnership of a building owned by himself, he signing for the partnership and for himself individually and delivering a copy to the other partner, that it was not intended to become binding until signed by the other partner was not sufficient to overcome the presumption arising from the facts concerning the execution and delivery.

8. LANDLORD AND TENANT—*how clauses in lease against subletting and assigning will be construed.* Clauses in a lease against subletting and assigning will be recognized and enforced but are not favored in the law and will be strictly construed.

9. LANDLORD AND TENANT—*when restriction in lease against transfer is not broken.* A restriction in a lease against transfer is not, as a general rule, regarded as broken by an involuntary alienation or transfer by operation of law.

10. PARTNERSHIP—*when lease properly included as asset on sale of property.* Where one partner, who owned a building leased to and used by the firm, filed a bill for dissolution of the partnership and sale of the firm property, such sale is by operation of law and does not constitute a transfer of the lease within the meaning of a

provision therein against subletting and assigning, and the lease was properly included as an asset of the partnership.

11. EQUITY—*right of complainant to dismiss bill.* When no cross-bill is filed, a complainant has a right to dismiss his bill at any time before final decree has been entered but he cannot file a written motion to dismiss and then sit idly by and wait until the case is decided against him and the decree entered and then exercise his right to dismiss.

12. APPEAL AND ERROR—*when motions to dismiss bill cannot be considered as part of record.* Motions to dismiss a bill cannot be considered as part of the record unless they are preserved by a certificate of evidence.

13. RECORDS—*conclusiveness of court's finding as against file marks or entries by clerk.* A finding by the court that a motion by complainant to dismiss his bill was not made until after the decree had been signed and entered cannot be contradicted by file marks or entries made by the clerk.

14. PARTNERSHIP—*insufficiency of evidence to show partner's unqualified acceptance of opportunity to purchase copartner's interest.* In a proceeding in equity for dissolution of a partnership, evidence examined and *held* insufficient to show that appellee unqualifiedly accepted the opportunity offered by appellant under the terms of the articles of partnership to purchase the interest of appellant.

Appeal from the Circuit Court of Knox county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed February 23, 1922.

CLYDE H. THOMPSON and R. C. WOOLSEY, for appellant.

FLETCHER CARNEY, JAMES W. CARNEY and SIG. B. NELSON, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellant, R. G. Sinclair, filed his bill in the circuit court of Knox county against his brother and partner, the appellee, Evan B. Sinclair, for the dissolution of a partnership existing between them. The cause was referred to the master who made a report recommending a decree dissolving the partnership, recommending the sale of the partnership property, and holding

that the premises used for partnership purposes were held under an oral lease. Exceptions were filed to the report and the chancellor entered a decree dissolving the partnership, ordering the partnership property sold and decreeing that the premises used for partnership purposes were held under a written lease between the parties. An appeal was prosecuted to this court and an appeal bond was filed. Subsequently a writ of error was sued out of this court, but no disposition was made of the appeal. . Evan B. Sinclair has moved to dismiss the writ of error on the ground that it was improperly sued out while the appeal was pending, and this motion was taken with the case.

The briefs and arguments have been filed, and those on behalf of the complainant below refer to the parties as plaintiff in error and defendant . in error, while those on behalf of the defendant in the trial court refer to the parties as appellant and appellee. The record is entitled on the outside of the cover "Appeal to the Appellate Court Second District, Illinois, from Knox Circuit Court," and on the fly leaf is "Appeal from the Circuit Court of Knox County." The assignment of errors is signed by R. C. Woolsey, who styles himself as solicitor for appellant, and the cross errors signed by solicitors for appellee.

An appeal operates as a continuance of the same case, and when a case is transferred to an appellate tribunal by appeal, there is no case pending in the trial court upon which a writ of error will operate at the suit of the party prosecuting the appeal until the case gets back into the trial court in some regular way. A second appeal cannot be taken when the first appeal has not been dismissed, and. when an appeal is pending, the case cannot be taken up by writ of error or by certiorari by the party who has appealed. 2 Cyc. 523; *Smith v. Chytraus,* 152 Ill. 664; *Daly v. Kohn,* 230 Ill. 436. In the latter case there was an appeal to the Appellate Court, which appeal was dismissed, and then

there was a further appeal to the Supreme Court, and while the last appeal was pending in the Supreme Court a writ of error was sued out from the Supreme Court by the party who had appealed. There was a motion in the Supreme Court to consolidate the appeal and the writ of error. It was held that a writ of error could not be sued out to review a judgment or a decree while an appeal by the same parties was pending to review the same decree or judgment, and the writ was dismissed. The appeal in this case was perfected by the filing of the bond and by the filing of the record in this court. The briefs and arguments were properly filed on the appeal, and the writ of error could not be sued out while the appeal was pending, and for this reason the writ of error will be dismissed and the case will be considered on the appeal.

The principal question for consideration is whether the premises occupied by the partnership were held under an oral or under a written lease. The evidence shows that appellant and appellee are residents of Galesburg, Knox County, and were partners under the name of Sinclair Bros. Appellant conducted this business from 1901 to 1903 when he admitted the appellee as a partner. The business consisted of the maufacture and sale of ice cream, the bottling and sale of soda water and the jobbing of fountain supplies. In 1913 the appellee became incapacitated through sickness from fully participating in the business and the active management devolved upon the appellant, and continued, under oral agreement, until December 10, 1914, when written articles of copartnership were executed. The articles of copartnership provided that each partner should have equal voice and the same powers in the business, but owing to the inability of the appellee to actively engage in the business, appellant, during the continuance of such inability, was to have the supervision and management of the business and was to receive $2,000 per year therefor. In the event the ap-

pellee became able to assist, at any time, for such services as he might perform he was to be compensated in such amount as was to be agreed upon. The duration of the partnership was for one year beginning January 1, 1915, and was to be extended from year to year so long as each party was satisfied. In case either party desired to retire, he was not to dispose of his interest until the other partner had an opportunity. to buy it.

From the formation of the partnership until December, 1915, the business had been conducted in rented property, but the partners had purchased a piece of ground upon which they contemplated building a building. In 1913 the appellee had a stroke of paralysis which left him in poor physical and mental condition. About a year later he had a second stroke of paralysis. After the sickness of appellee, the appellant proposed that he would buy the interest of the appellee in the land which had been purchased by the firm, paying the cost thereof, and that he would erect a building thereon and lease it to the firm at an annual rental of 10 per cent of the cost of the building, which proposition was accepted by appellee, and the building was erected and the firm moved into it in December, 1915. After the firm had moved in the building the appellee asked the appellant for a written lease. The appellant prepared a draft of a lease which was to run from October 1, 1915 to October 1, 1925, with the privilege of renewal for 5 years more. The rental was to be $193 per month which was 10 per cent of the cost of the building. It contained a covenant that neither party should sublet the premises nor assign the lease without the written consent of the appellant. The lease was drawn on December 10, 1915, but was dated back to October 1, 1915. It was prepared in duplicate and appellant signed the name of Sinclair Bros. on the top line, with a vacant line underneath it. On the third line he signed his own name. He gave appellee the

duplicate copy which appellee retained. The signed copy was retained by the appellant. On September 9, 1918, the appellant served a written notice on the appellee that the partnership would be terminated on December 31, 1918. On January 20, 1919, the appellee was told by the appellant that the firm had no lease on the building, and the appellant got the signed lease and handed it to the appellee who became very angry and ran out of the room taking the paper with him which he kept until it was offered in evidence.

The contention of the appellant is that the written lease was never executed, that he prepared it, signed it and gave a duplicate copy of it to the appellee for his examination; that the appellee was to examine the instrument and report to the appellant whether it was satisfactory, in which event it was to be formally signed and put into operation; that appellee never said anything to appellant about it after that time, and appellant considered that he did not intend to sign it, and in fact, did not sign, and for these reasons the lease never became operative. In connection with this contention of the appellant he argues, at some length, concerning the weight which should be given the master's report, which found that the lease was never executed; also whether the appellant, who was the lessor and one of the partners, had the right to testify as to his intention regarding the execution and delivery of the lease, where no formal assent appears on behalf of the appellee.

We do not deem it necessary to consider each of these questions in detail. Before there can be a valid lease, the parties must have the power and authority to execute it and it must, in fact, be executed before it can be valid and binding. There must be a delivery of the instrument and it must be accepted by the parties. *Jordan v. Davis*, 108 Ill. 336; *Ryan v. Cooke*, 172 Ill. 302; *Gross v. Arnold*, 177 Ill. 575. Under certain circumstances the parties may testify as to their in-

tention concerning the execution and delivery of the instrument. *Seidschlag v. Antioch*, 207 Ill. 280; *Township of Lovington v. Adkins*, 232 Ill. 510.

The evidence shows that after the building was erected the appellee kept insisting that a written lease should be executed. It is true that both his mental and physical conditions were not of the best, but it is conceded by appellant that appellee wanted the lease to be put in writing. In compliance with these repeated requests, the appellant had the lease prepared and he signed not only his own name to it but also the name of the firm. Under the partnership agreement, each partner had full and equal power to transact business for the firm and the execution of the lease came within the powers thus conferred and this authority was exercised by the appellant. After the lease was prepared and signed by the appellant he called in the appellee and submitted the lease to him. Appellee made no objections to any of the terms of the lease. He took the duplicate with him. The matter was left in this condition from December 10, 1915, until September 9, 1918, but it was not until January 20, 1919, that appellee was informed there was no written lease. The rent was the same under the oral and under the written lease and was paid in full. We are of opinion and so hold that the lease was a valid instrument and that appellant had full authority to sign it and when he did so sign it and the copy was delivered to the appellee and no objections made, that it became a valid and binding contract between the parties. We do not think the testimony of the appellant to the effect that it was not the intention that the lease should become binding until assented to by appellee was sufficient to overcome the presumption of law which arises under the undisputed facts in evidence concerning the execution and delivery. Probably no question would ever have been raised concerning its validity if trouble and disagreement had not arisen between the parties. Under

the facts and under the law the chancellor committed no error in decreeing that the lease was a valid instrument and that the premises were held under it and not under the oral lease.

The lease contained a clause against subletting and assigning, and appellant insists that, even though the lease be held valid and binding, it would not pass to the purchaser on dissolution as an asset of the partnership. The law recognizes and will enforce clauses in leases against subletting and assigning, but such restrictions are not favored in the law and will be strictly construed. *Postal Tel.-Cable Co. v. Western U. Tel. Co.*, 155 Ill. 335; *Christ v. Rake*, 287 Ill. 619. There are many cases in which it has been held that the rule against assignment does not apply, and these cases are exceptions to that rule. Appellant in his reply brief concedes that the rule does not apply where there is a transfer of the lease by operation of law. The restriction against transfer is not, as a general rule, regarded as broken by an involuntary alienation or transfer by operation of law. Unless expressly so provided, a transfer of the leasehold upon execution or foreclosure sale, or in insolvency or bankruptcy proceedings, or a confession of a judgment, does not amount to a breach of or restriction against assigning or subletting, unless it appears that the proceedings were voluntary or collusive on the part of the tenant with a view to defrauding the landlord of his rights. *Medinah Temple Co. v. Currey*, 162 Ill. 441; 18 Amer. & Eng. Encyc. of Law 661; 24 Cyc. 970.

As far as the appellee was concerned, he had made no attempt to sublet the premises or transfer the lease, nor had he any intention or desire to do so. He was willing to continue the partnership and comply with all the provisions of the lease. There is some evidence tending to show that appellee wanted to take over the entire business, and, if he had done so, such action could not be construed as an assignment of the lease.

The business was of more value as a going concern than it would otherwise be. The lease was necessary to make it valuable as a going concern. If the lease did not go with the sale, the partnership property would only be worth what it would bring on the market as so much personal property and not as a business which was being operated at a profit. By its sale as so much personal property and not as part of the established business, both the appellant and appellee would be greatly damaged. It was to the interest of each that the lease go with the other property as a part of the business. If the lease was not included as part of the assets of the firm, then the appellant could buy the personal property at much less than it was worth and, owning the building, he could go on with the business without having to pay what it was worth as a going concern. This opportunity was not open to the appellee because he could not get the lease in case he was the purchaser, and the business might be lost to him. The appellant filed his bill to force a dissolution of the partnership and a sale of the property. Such a sale is by operation of law and does not constitute a transfer of the lease as provided therein. It is only equitable and just that each partner should have a fair and equal opportunity to bid on the property as a going business and for these reasons the chancellor was correct in including the lease as an asset of the partnership.

The exceptions to the master's report were argued on December 17, 1920, and the cause was continued until February 14, 1921, at 10 o'clock a. m., when the decree was entered. Appellant contends that on February 12, 1921, he filed a motion to correct certain findings of the master, and the motion was noted by the clerk on the docket in red ink, and the appellant also filed his motion in writing to dismiss the bill; that the motion to dismiss was called to the attention of the solicitor for the appellee prior to the opening of court

on February 14; that the case was called up about 2 o'clock p. m., February 14, and the motion to correct the findings of the master was read, argued and overruled. Next the motion to dismiss was read, argued and overruled, and thereupon the chancellor entered the decree. The appellant contends that he had a right to dismiss his bill before the decree was filed and that the chancellor was in error in not permitting him to do so, there being no cross-bill on file.

The rule is that where no cross-bill is filed, the complainant has a right to dismiss his bill at any time before the final decree has been entered. *Purdy v. Henslee,* 97 Ill. 389; *Williams v. Breitung,* 216 Ill. 299; *Fischheimer v. Kupersmith,* 258 Ill. 392. It seemed to be conceded by appellant that these motions and affidavits are not contained in the certificate of evidence. They could not be considered as part of the record unless they are preserved by a certificate of evidence. *Savannah & York Drain. Dist. Com'rs v. De LaVergne,* 298 Ill. 480. The court found that the motion to dismiss was not made until after the decree had been signed and entered and appellant had prayed an appeal. Such a finding by the court cannot be contradicted by file marks or entries made by the clerk. The complainant cannot file a written motion to dismiss and then sit idly by and wait until after the case is decided against him and the decree entered and then exercise his right to dismiss. *City of Marengo v. Eichler,* 245 Ill. 47; *City of Decatur v. Barteau,* 260 Ill. 612. It is apparent, even from the statement of the appellant, conceding that both the motion to correct the report of the master and the motion to dismiss were filed two days before the date of the decree, that when the case was called up on February 14, the motion to correct was argued first. If the appellant desired to dismiss, we are at a loss to see why he first argued the motion to correct the master's report. If he intended to dismiss, any error in the report of the

master was immaterial. On account of the recitals of the record we hold that no error was committed in overruling the motion to dismiss.

The cross errors of appellee are based upon the chancellor's failure to find that the appellee was entitled to take over the business and the lease. The partnership agreement provided that if either party desired to retire from the firm, he should give notice to the other partner and thereupon an inventory should be made and the retiring partner should sell his interest according to the value shown in the inventory. In January, 1919, before the present suit was brought, appellant made an inventory of partnership property, which he presented to the appellee. Appellee testified that he told appellant that he did not feel able to take the business but, under the circumstances, would have to do so. Appellant testified that what appellee said was, "I guess I will take it." Appellee is now asking the court to find that he had the right to take over the business and lease, on the basis of the inventory, and that the chancellor should have permitted him to do so. We have carefully examined the evidence on this point and are of the opinion that there was a statement made by appellee with reference to buying the interest of the appellant in the business, but the statement was not an unqualified acceptance as provided in the articles of copartnership, and the chancellor was correct in so holding.

We find no reversible error and the decree will be affirmed.

*Decree affirmed.*