(No. 14276.—Decree affirmed.)

JOHN KILCOIN, Appellant, *vs.* LOUIS ORTELL *et al.* Appellees.

*Opinion filed April 19, 1922.*

1. SPECIFIC PERFORMANCE—*written contract must be delivered to become binding—evidence.* A written contract, although signed, may fail to become presently binding for want of delivery, and testimony as to the circumstances and as to what was said and done at the time of the transaction is competent on the ·question whether the contract was completed and delivered with the intention that it should become presently binding.

2. SAME—*possession of contract by complainant is not conclusive evidence of its delivery—fraud.* Possession of a contract by the party seeking to enforce it is presumptive evidence of its delivery but is not conclusive, and evidence may be admitted to prove fraud in obtaining possession or that the contract was, in fact, never delivered.

3. SAME—*rule against admission of oral evidence to vary contract presupposes valid execution and delivery.* The rule that contemporaneous oral statements cannot be heard to alter or vary the terms of a written instrument presupposes execution and delivery of the writing with intent to bind the parties by its terms.

4. SAME—*delivery of contract on condition is not complete delivery.* A delivery of a contract on condition is not a complete delivery until the condition is fulfilled.

5. SAME—*when equity will permit liberal inquiry as to circumstances of execution of contract.* Unless the parties have fairly and understandingly entered into a valid contract specific performance is not a matter of right but rests in the sound discretion of the court, and much liberality is permitted in inquiring into the circumstances to determine whether there has been fraud, unfairness or advantage taken in securing the contract.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. W. T. CHURCH, Judge, presiding.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for appellant.

JOHN K. SCOTT, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was a bill for specific performance brought by appellant against appellees to enforce a contract between the parties with reference to a trade as to certain real estate. The cause was referred to a master, who reported in favor of allowing the prayer of the bill for specific performance. On a hearing before the chancellor the master's recommendations were overruled and a decree entered dismissing the bill for want of equity. From that decree this appeal has been taken.

The contract is dated April 23, 1920, was signed by the parties hereto, and is as follows: "R. F. Wood, L. Ortell trade Nos. 1009 and 1011 7th ave., city of Rock Island, clear of incumbrance, and will give possession of title May 1, 1920, also $300 in cash. John Kilcoin trades R. F. Wood and L. Ortell 280 acres farm in Juneau county, Wisconsin, described as follows, [describing it,] all free from incumbrances except tax ditches after April, 1920." The contract was written and signed in appellees' office. They and Dan Flynn were partners engaged in the real estate business, but Flynn had no interest in the trade and took no part in it. When the trade was first spoken of, appellant offered to trade his Wisconsin land for appellees' Rock Island houses and lots and $600 cash. Appellees would not agree to pay $600 difference and they finally agreed on $300 boot money.

Appellees testified, and were corroborated by other witnesses, that throughout the negotiations and after the con-

tract was signed it was understood and agreed that appellees were to see the Wisconsin land before closing the deal, and if they were dissatisfied with the land the contract was to be destroyed and abandoned. Appellant contends that the contract is absolute on its face, is unambiguous, and cannot be contradicted or modified by proof of oral declarations made before or at the time it was signed. The rule is well settled that it is not competent to prove by parol that a completed and valid contract does not mean what its plain language imports, but we are of opinion that rule is not controlling in the decision of this case. The proof shows the contract was not delivered to appellant. The mere signing of the contract was not sufficient to make it presently binding unless it was also delivered. That appellant said he had never seen his Wisconsin land, and that appellees had never seen it, is undisputed. Burkey, who was present when the transaction took place, lived in Wisconsin not far from the land and was acquainted with it, of which fact appellant informed appellees. Koester, who was also present, had often seen the land and was familiar with it. Soon after the contract was signed appellees went to Wisconsin to see the land, and they testified Burkey showed it to them. Appellees testified appellant told them 40 acres of the Wisconsin land was in cultivation; that there was a good road through it and a school house near it. Wood testified that the land was low, with a ditch running through it; that 100 acres or more of it was under water; that part of it was sand, and there were some trees and underbrush on it. None of it appeared to have ever been broken with a plow. The road was more of a path than a road. There was a dilapidated building near it that at one time was a school house or church, or both. After their return appellant came to appellees' office and inquired if they had seen the farm. Wood said he had and they could not trade, for he did not consider the land of any value. Appellant said that was all right; that he had never seen the land himself and they

would call the deal off. Ortell testified he visited the land; that it looked like quicksand; that about 100 acres of it was under water and none of it had been plowed. After his return appellant came to Ortell's office and asked what he thought of the land. Ortell said he would not give a dollar an acre for it, and appellant told him to tear up the paper. About two days later appellant's attorney came to appellees' office and demanded performance of the contract, and May 14, 1920, the bill was filed.

The bill alleges the contract was not in appellant's possession; that it was by mutual agreement left with appellees and they had refused to give him a copy of it. He testified on the trial that when the contract was signed he turned it over to appellees to keep and never had it in his possession afterwards. Groesbeck, appellees' book-keeper to whom appellant dictated the contract, testified that after it was signed appellant gave it to him and said he did not want it and told witness to keep it; that if the land was not satisfactory to appellees the deal was not to go through. Wood testified appellant handed the contract to the book-keeper, Groesbeck, and left the office. Ortell testified appellant told them to keep the contract and if the farm was not satisfactory to tear it up. Cramer, who was present at the time of the transaction, testified Ortell said he would not give appellant the check until he had seen the land, and appellant said he could go see the land and if it did not suit him he could tear up the contract. He afterwards met appellant on the street, and appellant said he did not care whether the deal went through; that appellees could tear up the contract if they wished to. Flynn testified he was present when appellant dictated the contract; that Ortell objected to delivering the check until appellees had seen the land; that appellant said that was all right; that if appellees did not like the land they did not have to take it and the deal would be off. The check referred to by the wit-

nesses was for $300 and was written by Wood. It was
never torn out of the check book and remained in the pos-
session of appellees.

We think the testimony referred to was competent on
the question whether the contract was a completed one, in-
tended by the parties to become presently binding. A writ-
ten contract may fail to become binding for want of de-
livery. Possession of the contract by the party seeking to
enforce it is presumptive evidence of its delivery but not
conclusive. Evidence tending to prove fraud in obtaining
possession, or that it was, in fact, never delivered, is always
admissible, and this has been held to be so in actions at law.
In *Biederman* v. *O'Conner,* 117 Ill. 493, an action for dam-
ages was brought by plaintiff for breach of a written con-
tract of defendant to deliver plaintiff ten thousand bushels
of corn in the fall of 1882 at twenty cents per bushel. The
defense interposed was that plaintiff agreed when the con-
tract was signed by defendant to pay him $1000 in cash
at that time, but that was not mentioned in the written in-
strument; that the contract was not delivered to plaintiff
but he obtained its possession by fraud. Plaintiff did not
pay the $1000 cash. It was held he could not recover, and
that evidence of his promise to make the cash payment of
$1000 as part of the completed contract and that he obtained
possession fraudulently without doing so was competent. A
very similar question was considered in *Jordan* v. *Davis,*
108 Ill. 336, where the court said: "Delivery of a writ-
ten contract is indispensable to its binding effect, and such
delivery is not conclusively proved by showing the placing
of the paper by the alleged contracting party in the hands
of the other. Delivery is a question of intent, and it de-
pends whether the parties at the time meant it to be a de-
livery to take effect presently."

The rule that contemporaneous oral statements cannot
be heard to alter or vary the terms of a written instrument
presupposes execution and delivery of the writing with in-

tent to bind the parties by its terms. (17 Cyc. 701.) A delivery on condition is not a complete delivery until the condition is fulfilled. (13 Corpus Juris, 307.) These rules are applied in actions at law, and courts of equity, when called upon to enforce specific performance of contracts, have always indulged great latitude in hearing evidence whether in equity and good conscience the court ought to specifically enforce performance. Within limits, specific performance is not a matter of right but rests in the sound discretion of the court, and much liberality is permitted in inquiring into the circumstances as to whether there has been fraud, unfairness or advantage taken in securing the contract. Under such circumstances specific performance will not be enforced in equity. (*Espert* v. *Wilson,* 190 Ill. 629; *Stubbings* v. *Durham,* 210 id. 542; *Tryce* v. *Dittus,* 199 id. 189.) That rule does not apply where the parties fairly and understandingly enter into a valid contract. The enforcement of specific performance of the contract in such cases is a matter of right. (*Cumberledge* v. *Brooks,* 235 Ill. 249; *Anderson* v. *Anderson,* 251 id. 415; *Corrigan* v. *Ralph,* 265 id. 571; *Miedema* v. *Wormhoudt,* 288 id. 537.) The proof we hold competent on the question of the intent of the parties that the contract become presently binding shows that such was not the intention. The contract was not delivered, and the proof warrants the conclusion that both it and the $300 check were withheld because the contract was conditional upon appellees being satisfied with the Wisconsin land after they had seen it, and both parties to the contract so understood it. Appellees were not satisfied with the land after seeing it, so notified appellant, refused to make the exchange, and refused to give appellant the contract or a copy of it. If such was the condition agreed to before the contract became effective and binding, it can not be said appellees' refusal to make the exchange of properties was unreasonable.

While there was no proof of the value of the Rock Island houses and lots, they were occupied by tenants, were in a growing and prosperous city, and we are warranted in assuming they were of substantial value. Koester, a witness for appellant and who knew the Wisconsin land, testified Ortell told him the day the contract was signed, by the trade the land would stand them about $15 or $16 per acre, and witness said he thought it was a good trade. He was a dealer in Wisconsin land and had been over appellant's land more than a hundred times. He further testified none of it was covered with water; that there were two ditches through it; that there had been a cranberry marsh of about 80 acres on the land but it had been drained; that he did not know whether any of the land had ever been plowed. There is some timber on the land but most of it is cleared. There is a road on the land and a school house near it, but the witness did not know whether school had been maintained in it the last year. He did not give any opinion as to what the land was worth. According to appellees' testimony it was of little value. One of them testified he did not consider it of any value, and the other appellee testified it was not worth more than one dollar per acre. It was not a farm, but it was described in the contract as a 280-acre farm in Juneau county, Wisconsin. That the parties did not intend the contract to become binding until after appellees had seen the land and were satisfied with it is supported by competent proof, and under the testimony as to the character of the land appellees did not act unreasonably in refusing to accept it.

We are of opinion a court of equity should not enforce the specific performance of the contract, and the decree of the circuit court is affirmed.          *Decree affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting.