Morteza Khosrovschahi et al., Appellees, v. Harry E. Goldberg et al., Trading as Brush and Weaving Hair Manufacturing Company, Appellants:

Gen. No. 44,182.

Opinion filed February 16, 1948. Released for publication March 2, 1948.

BLANKSTEN & LANSING, of Chicago, for appellants.

POPE & BALLARD, of Chicago, for appellee; PARKER L. JACOBSON, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs brought an action against the defendants to recover for a breach of two contracts. In a Bill of Particulars the damage claimed was $10,000.00. After a number of pleadings were filed by the defendants and motions made and orders entered, plaintiffs filed an affidavit for a summary judgment, to which the defendants filed an "Amended Affidavit of Merits to Affidavit for Summary Judgment". Plaintiffs' motion was sustained and a summary judgment entered in plaintiffs' favor and against the defendants for $8,750.00. Defendants appeal.

In short compass, the substance of plaintiffs' affidavit for summary judgment is that on April 6, 1945 plaintiffs and defendants entered into two contracts through the brokerage firm of Leo Hess, Inc., that one of these contracts called for the delivery of 100 bales of wool "ex-warehouse at Buenos Aires, Argentina" of a certain quality for immediate delivery at 11½ cents per pound, and the other contract for 100 bales of wool of a different type for immediate delivery at 10½ cents per pound; that pursuant to the terms of

the contracts plaintiffs on April 10, 1945 "did open irrevocable commercial letters of credit", No. 5654 to cover contract A and No. 5653 to cover contract B, "with the Chemical Bank and Trust Company of New York City"; that the letters of credit constituted a complete performance by the plaintiffs of the two contracts; that the defendants failed to carry out their obligations under the two contracts and covered by the letters of credit by failing to deliver the wool pursuant to the contracts; and that, after allowing defendants all just deductions, credits and set-offs they owe plaintiffs $8,750.00 "together with interest at the statutory rate from May 10, 1945, and costs". That the $8,750.00 is arrived at in the following manner: the letters of credit above mentioned were good and valid from April 10, 1945 through May 9, 1945 as will appear from the letters attached to the affidavit; that during the "period from April 10, 1945, through May 9, 1945, the highest market price at Buenos Aires, Argentina, for the Wool" covered by contract A, "was on May 8, 1945, when the market price was 16¼¢ per pound; 100 bales of said Wool would weigh 100,000 pounds" and that if the defendants had performed contract A immediately as required by its terms, plaintiffs could have sold the wool at Buenos Aires and "would have realized a profit of 4¾¢ per pound" or a total of $4,750.00; that during the same period the highest market price at Buenos Aires for the wool covered by contract B "was on April 19, 1945, when the market price was 14½¢ per pound; 100 bales of said Wool would weigh 100,000 pounds" and if the defendants had performed contract B as required by its terms, plaintiffs could have sold the wool covered by that contract at Buenos Aires and "would have realized a profit of 4¢ per pound" or a total of $4,000.00.

The substance of defendants' "Amended Affidavit of Merits to Affidavit for Summary Judgment" is that they believe they have a meritorious defense, that they

have personal knowledge of the facts alleged in the affidavit, and would testify to them if called as witnesses in court. They admit the execution of the "instruments" Exhibits A and B but state they were executed under the following circumstances: that prior to April 6, 1945 the defendants contracted with Paul Pachy to purchase the wool in question; that about April 2, 1945 Leo Hess of Leo Hess, Inc. "who was then the duly authorized agent of the plaintiffs, and representing them as their purchasing agent and broker, and pursuant to instructions of his principal, approached these defendants in behalf of the plaintiffs and made the following statement: 'I represent Khosrovschahi & Co., who are interested in acquiring the wool which you have contracted to purchase from Paul Pachy. I understand that you are unable to obtain this wool because of your inability to qualify under the War Production Board order. Would you be interested in relinquishing your rights to acquire this wool so that my client, Khosrovschahi & Co., may acquire it?' "; that the defendants answered they would be willing to assign their right, title and interest in their contract with Pachy to plaintiffs, the principals of Hess; that thereupon Hess stated that in order to permit his principal "to import" the wool, it would be necessary to have a contract signed by the defendants "indicating that the defendants had contracted to sell the wool to the plaintiffs, and Hess then and there stated to the defendants that, if they would sign such a contract, it would be held by Hess only for the purpose of display to other persons, enabling him to arrange for the import of the wool, would not be delivered to the plaintiffs, and neither of the parties would be liable to any performance thereunder. Hess also stated that as soon as the contracts has [sic] served their purpose for display to parties other than the plaintiffs, they would be cancelled and returned to the defendants"; that the defendants replied that, with

the understanding that the contracts would not be enforceable by either of the parties, they would sign the two documents, and pursuant to such understanding Exhibits A and B were executed by them and delivered to Hess.

As an alternative defense the defendants averred that the "purported contracts" were contrary to law as being in violation of "General Imports Order M-63 as amended June 2, 1942, issued by the United States Government under Title 32-National Defense, Chapter IX, War Production Board, forbidding the acquisition of this type of merchandise without a special Government Import Permit"; that the plaintiffs did not have or obtain such permit; that the wool in question was embraced by the General Imports Order M-63 and that plaintiffs sought to acquire the wool "for the specific purpose of importing same into the United States for fabrication and manufacture into finished products."

It is further set up that defendants deny that plaintiffs were damaged $8,750.00 or in any sum whatever. They state, as a matter of fact and from their own knowledge, plaintiffs could have easily replaced the wool at prices coinciding with those called for in the two contracts A and B, that they have had many years of experience in buying and selling wool "and are well acquainted with market prices and conditions, and deny that the market price for wool" covered by contract A was on May 8, 1945, 16¼¢ per pound; deny that the market price for the wool covered by contract B was on April 19, 1945, 14½¢ per pound, and also, from their own knowledge, would not have realized a profit of 4¾¢ per pound for the wool covered by exhibit B.

If the two contracts were executed by the defendants and delivered to Hess under the conditions alleged to have been stated by Hess, they would, under the allegations of defendants' affidavit, have

been in violation of the federal rule, and, therefore, unenforceable by either party. It is the law that where a written document in the form of a contract is delivered conditionally, this may be shown by parol evidence. *The Northwestern Consolidated Milling Company v. Sloan*, 232 Ill. App. 266, where we cite *Jordan v. Davis*, 108 Ill. 336; *Kilcoin v. Ortell*, 302 Ill. 531; 5 Wigmore on Evidence (2d Ed.) sec. 2400 and other authorities. But as above stated, we think the two contracts, under the allegations of defendants' affidavit, rendered them unenforceable by either party.

██ We are further of opinion that the question of plaintiffs' claimed damages, which was denied by defendants' affidavit, raised a question of fact which would prevent the entry of a summary judgment.

The judgment of the municipal court of Chicago is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

NIEMEYER, P. J., and FEINBERG, J., concur.