RICHARD J. GLABMAN *et al.*, Plaintiffs-Appellees, *v.* SUZANNE BOUHALL, Defendant-Appellant.

First District (5th Division)   No. 79-727

Opinion filed February 1, 1980.

Herman & Tannebaum, of Chicago, for appellant.

Much, Shelist, Freed, Denenberg, Ament & Eiger, P. C., of Chicago (Michael J. Freed and Anthony C. Valiulis, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from a judgment order entered in favor of plaintiffs, Richard and Miriam Glabman, following a bench trial, whereby defendant was ordered to return possession of a condominium apartment owned by plaintiffs. On appeal, defendant contends that: (1) the trial court erred in refusing to admit in evidence a document which defendant maintains is the lease agreement for the apartment; and (2) the trial court's decision is against the manifest weight of the evidence. We affirm. The following facts were adduced at trial.

The plaintiffs' case in chief consisted only of the testimony of Richard Glabman, one of the owners of the apartment. Glabman and his wife had purchased the condominium from Jeffrey Rollins on December 1, 1978. Defendant was living in the apartment at the time, but Rollins had never told Glabman that there was a written lease. At the closing of the condominium sale, Rollins' attorney told Glabman that there was no lease for the apartment. Glabman also testified that defendant had never told him that she had an "executed signed lease" and that he didn't remember if defendant had shown him a copy of a lease. It was stipulated that defendant had received notice of termination of her tenancy as of March 1, 1979. Glabman testified that defendant was still in the apartment at the time of trial, March 26, 1979.

Defendant testified that she had been living in the apartment since April 1, 1978, paying a monthly rent of $825. She had received a lease from Rollins' attorney in late February 1978 along with a letter signed by Rollins' attorney. She signed the lease but did not notice that Rollins hadn't signed it. Defendant then called the attorney whom Rollins had directed to draft the lease and sales contracts for the apartment. He identified both the lease showing defendant as lessee and the letter he sent with the lease. He had received no response to the letter and did not pursue the matter further. The lease and letter were offered into evidence but were not admitted, on the grounds that the foundation for their admission was insufficient.

Rollins next testified that, after negotiating the terms of the lease with defendant, he had his attorney prepare the document. The lease and attached letter were again offered into evidence and again were not admitted, this time on the grounds that Rollins' signature was not on it. Rollins continued his testimony, stating that the lease was sent to defendant but that he changed his mind after the lease was sent and told defendant he planned to sell the apartment. Defendant offered to buy the apartment, Rollins testified, and there was no further discussion of the

lease. Defendant later told him she couldn't buy the apartment and asked him for two or three months' notice if he wanted her to move.

Rollins further testified that he concluded he and defendant had a month-to-month agreement because they did not discuss anything pertaining to the apartment as long as defendant paid the rent. Defendant's offer of the documents into evidence was once again rejected on the grounds that it was not executed by both parties and was therefore within the Statute of Frauds. Rollins continued to testify, admitting that he had offered defendant $2000 to move out of the apartment rather than merely asking her to move voluntarily. He also stated that, in order to sell the apartment to Glabman, he had to have a tenant there until May or June of 1979. He had tried to get defendant to sign a lease for that period but, to his knowledge, she did not.

Defendant was recalled and continued her testimony. She had first met Glabman in July or August 1978, when he was being shown the apartment. She told him she had a written lease and showed him a copy of it the second time he came to see the apartment. Defendant also testified that she, Rollins and her former attorney had conversations regarding the sale of the apartment. Rollins told her that he could not sell the condominium as an investment if it was subject to a two-year lease. He took her to lunch and offered her $2000 to get out of the lease, but she declined. She was notified of the sale and Glabman offered her a new lease. The day before closing, Rollins renewed his offer to her, increasing it to $4000. After closing, Glabman sent defendant a letter telling her she was on a month-to-month lease.

Defendant's former attorney testified that he had two conversations with Rollins, one by telephone and the other in his office with defendant present as well. Rollins told him at that time that the sales contract for the apartment represented that defendant's lease would end at the time of purchase but that Glabman was willing to give her a five-month lease. Rollins then offered defendant $2000 to terminate her lease with him. Rollins was recalled by plaintiffs and testified that he had never seen defendant's former attorney before his appearance in court and that the extent of their contact had been two telephone conversations.

The trial court entered a judgment finding that plaintiffs were entitled to possession of the apartment. The writ of possession was stayed pending defendant's appeal, the court ordering her to pay $825 per month for use and occupancy of the apartment.

OPINION

Defendant first contends that the lease she signed should have been admitted into evidence. While we agree that the lease was admissible, we

conclude that its exclusion did not operate to her prejudice and accordingly affirm the judgment of the trial court.

■■ A contract which is unsigned by the party to be charged may be admissible if it is material to the theories of the case, even if the contract eventually proves to be unenforceable. (See, *e.g., Wesclin Education Association v. Board of Education* (1975), 30 Ill. App. 3d 67, 331 N.E.2d 335.) In *Haffa v. Haffa* (1969), 115 Ill. App. 2d 467, 253 N.E.2d 507, the plaintiff argued that certain documents were erroneously admitted into evidence because it was not established that she had signed the documents. In affirming the trial court, the court held that the documents were admissible because they tended to advance the defendant's theory that the plaintiff acknowledged the validity of the documents by her actions, notwithstanding the absence of her own signature. The court also noted that the documents were properly authenticated because the plaintiff had recognized the disputed documents through her subsequent actions, including accepting rent pursuant to a lease which she had not signed.

■■ As in *Haffa*, the lease here was offered to show that Rollins had acknowledged its legal effect by accepting payments pursuant to the lease. Furthermore, the lease was identified by Rollins himself, by the attorney who prepared it at Rollins' direction, and by defendant, who had signed it. We therefore find that the document was properly authenticated and relevant and should have been admitted into evidence.

■■ However, we cannot agree that the trial court's refusal to admit the lease constitutes reversible error, for defendant has failed to show that the written lease was enforceable. Defendant testified that she received the unsigned lease with a letter from Rollins' attorney, instructing her to sign the lease and return it. Although she signed the lease, there is no testimony that she returned the signed lease, either to Rollins or to his attorney. Delivery and acceptance of a written contract are necessary if it is to be of binding effect (*Kilcoin v. Ortell* (1922), 302 Ill. 531, 135 N.E. 16; *Biederman v. O'Conner* (1886), 117 Ill. 493, 7 N.E. 463; *Sinclair v. Sinclair* (1922), 224 Ill. App. 130), and defendant's failure to present evidence that she indicated her acceptance of the proposed lease by delivering it to Rollins or his attorney compels the conclusion that the document offered into evidence is not an enforceable contract.

■■ Where a contract is enforced on the basis of a single signature, it must generally be signed by the party to be charged under the contract (*Ullsperger v. Meyer* (1905), 217 Ill. 262, 266, 75 N.E. 482, 483) and delivered to the nonsigning party who indicates acceptance by performing. (*Sinclair v. Sinclair*.) Defendant's reliance on *Fields v. Brown* (1900), 90 Ill. App. 195, *rev'd on other grounds* (1900), 188 Ill. 111, 58 N.E.

977, and *Henderson v. Virden Coal Co.* (1898), 78 Ill. App. 437, is misplaced, for both cases are distinguishable and serve to underscore the absolute necessity of acceptance and delivery in the absence of execution by both parties to the agreement. In *Fields*, a lease was prepared in duplicate, the lessor and lessee each signing one document and immediately giving it to the other. The lessee denied receiving the copy signed by the lessor, but took possession of the property according to the terms of the lease. In enforcing the lease against the lessee, the appellate court also pointed out that the lessor could not repudiate the lease simply because he had not signed the copy of the lease in his possession, for he had delivered the premises to the lessee and accepted payment from her. Similarly, in *Henderson*, the lessor had signed the lease and delivered it to the lessee, who accepted it, took possession of the premises and paid rent. The lease was held to be binding on both parties although the lessee had not signed it.

In the instant case, defendant was the only party who signed the lease and the record does not disclose that she ever sent the signed copy to Rollins. Having failed to notify Rollins of her acceptance and to deliver the executed lease according to his instructions, defendant cannot now bind Rollins to the terms of the lease. *McGivern v. Parkhill* (1915), 195 Ill. App. 343 (abstract).

■■ There is ample evidence to support the trial court's conclusion that defendant's occupancy of the apartment was on a month-to-month basis. Rollins testified that, before he received any rental payments, he told defendant he could not enter into a written lease because he intended to sell the apartment. He also testified that defendant had considered buying the apartment herself and that he offered her a second written lease with a shorter term. Defendant testified that plaintiffs offered her a lease after they purchased the apartment. According to Rollins, he and defendant had no real discussions about the apartment as long as she paid the rent. It was up to the trial court to weigh the evidence and, although there is evidence that also supports defendant's position that her tenancy was to be for two years, we cannot say that the trial court's finding that she was a tenant from month to month is against the manifest weight of the evidence. *Valasquez v. Yellow Cab Co.* (1975), 32 Ill. App. 3d 934, 337 N.E.2d 365.

Finally, we note that because there was no written lease between Rollins and defendant and the trial court found that defendant rented the apartment from month to month, we need not consider the Statute of Frauds argument raised by defendant. Defendant was still renting the apartment on a monthly basis when plaintiffs purchased the apartment, and they properly notified her of the termination of her tenancy.

Accordingly, we affirm the judgment of the trial court finding that plaintiffs are entitled to possession of the apartment.

Judgment affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.